UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:22-cr-00153-DJC |
| Plaintiff, | |
| v. | ORDER |
| GARY WAYNE STUCKEY, | |
| Defendant. | |

Defendant moves this court to (1) suppress physical evidence obtained during his June 8, 2022 traffic stop, and (2) suppress all subsequent statements made as fruits of the poisonous tree pursuant to alleged Fourth Amendment violations. (Mot. (ECF No. 32) at 1–2.)

After considering the parties' evidence and arguments, this Motion is DENIED.

## BACKGROUND

Defendant, Gary Wayne Stuckey, is a 56-year-old black man who suffers from a seizure disorder and holds a medical cannabis card he alleges permits him to grow and possess multiple pounds of cannabis.[1] (Mot. at 2.)

---

[1] The evidence provided by Defendant states that he is a producer and director for constituent members of an agricultural cooperative whose membership exceeds 16 persons, which permits the growth of no more than 99 mature plants and the possession of as much as 10 pounds of medicinal cannabis to aid and facilitate the medical needs of members of the cooperative. (Ex. B (ECF No. 32-1)

1

On June 8, 2022, Stockton Police Officer Farhad Khan conducted a traffic stop of Defendant's vehicle after observing it had tinted front windows and lacked a front license plate allegedly in violation of California Vehicle Code sections 26708(a)(1) and 5200, respectively. (Opp'n (ECF No. 44) at 1–2; Incident Rep. (ECF No. 48) at 10.) When Defendant pulled over, he rolled down the driver-side window. (Mot. at 2.) Officer Khan approached Defendant, informed him why he had been pulled over, and ordered him to roll down the passenger-side window, which Defendant did. (*Id.*; Opp'n at 2.) Officer Khan then requested Defendant's license, registration, and proof of insurance. (Mot. at 2; Opp'n at 2.) As Defendant reached over the center console towards the glove compartment for his documents, Officer Khan noticed two digital scales and a box of plastic sandwich bags on the driver-side floorboard beneath Defendant's legs. (Incident Rep. at 10.)[2]

While Defendant was gathering the requested documents, a second officer, Stockton Police Sergeant Houston Stephens arrived, approached Defendant's vehicle, and shone his flashlight into the front passenger side of the vehicle. (Mot. at 2–3; Opp'n at 2.) Officer Stephens informed Officer Khan "alright, he's got about two—two pounds of Marijuana on the floor." (Ex. E (ECF No. 32-1) at 1:00.) Defendant replied,

---

at 9 (citing Cal. Health & Safety Code §§ 11362.765, 11362.775).) The Government does not dispute this claim.

[2] Defendant asserts that the body camera footage is the best evidence before the Court, pointing out minor inconsistencies between the footage and Officer Khan's narrative in the incident report. (*See* Sur-Reply (ECF No. 49) at 1–4.) Defendant argues that the body camera shows Officer Khan did not identify the scales and baggies on the driver-side floorboard until after the officers initiated the search. (*Id.* at 3.) The incident report is clear, however, that Officer Khan saw scales and baggies on the floorboard beneath Defendant's legs when Defendant reached over the center console to collect his documents. (Incident Rep. at 10.) The body camera footage shows Officer Khan shining a flashlight onto the driver-side floorboard as Defendant is arranging his papers. (Ex. D. (ECF No. 32-1) at 00:55–00:57.) While the body camera footage does not show the scale and baggies at this point, the camera was positioned on Officer Khan's chest, and was therefore capturing footage from a lower angle than Officer Khan, who benefitted from a higher vantage point. Thus, the body camera footage is not inconsistent with Officer Khan's statements that he saw the scales and baggies before the search began. Given that the body camera footage confirms the scales and baggies were in plain view on the driver-side floorboard once the car door was opened, (*id.* at 1:31–1:48, 2:55–3:12, 3:33–3:40), the Court credits Officer Khan's assertion that he saw the scales and baggies before the search began.

"it's about a pound," and started to reach for a large white envelope tucked in the passenger-side sun visor, saying "and I've got a–." (Mot. at 3; Opp'n at 2; Ex. D at 1:10–1:15.) Officer Khan interrupted and asked Defendant if he had anything else illegal in the car, and whether he was on probation, parole, or post-release community supervision, to which Defendant replied "no." (Mot. at 3; Opp'n at 2; Ex. D at 1:13–1:22.) Officer Khan then announced "[w]e're just gonna do a search." (Mot. at 3; Ex. D. at 1:22.)

Officer Khan asked Defendant to place his hands on his head, opened the vehicle door, patted Defendant down, and then asked him to step out of the vehicle, detaining him in handcuffs. (Mot. at 3; Opp'n at 2.) Defendant informed Officer Khan, "I have a marijuana card in the car," which received no response. (Mot. at 3; Opp'n at 2; Ex. D at 2:13.) Instead, Officer Stephens asked Defendant about a vodka bottle in the vehicle with the security cap attached. (Opp'n at 2.)

As Officer Khan moved Defendant to his patrol vehicle, Officer Stephens informed Defendant that he was going to turn off the vehicle. (*Id.*) When Officer Stephens leaned into the vehicle, he observed a firearm holster on the floorboard and notified Officer Khan. (*Id.*) The officers then observed a handgun wedged between the center console and the driver's seat. (*Id.*) Officer Khan explained to Officer Stephens that Defendant "had long legs so I couldn't see [the holster] but I saw the scale and bags." (*Id.*; Ex. D at 3:20–3:26.)

Defendant now moves to suppress the physical evidence obtained as a result of the search,[3] and to suppress the statements made to the officers during and after the search as fruits of the poisonous tree. (Mot. at 5–9.) The Court heard arguments from both parties on May 11, 2023, and ordered Plaintiff to submit the incident report

---

[3] The search of the vehicle produced: (1) a dark green Polymer 80 handgun with a black magazine inserted (containing 5 rounds and 1 round in the chamber), (2) over a pound of methamphetamine, (3) approximately 4 pounds of cannabis, (4) 81 ecstasy pills, (5) a small amount of suspected cocaine and fentanyl, (6) $540 in U.S. currency, (7) two digital scales, and (8) a box of plastic sandwich baggies containing 30 bags. (Opp'n at 2–3.)

referenced in open court by close of business, also granting Defendant leave to file a sur-reply within seven days. (*See* Minute Order (ECF No. 47).) Plaintiff filed the incident report that same day, and Defendant filed a sur-reply on May 18, 2023.

**LEGAL STANDARD**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  Warrantless searches and seizures violate the Fourth Amendment unless they fall within one of a "few specifically established and well-delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  "Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

Under the exclusionary rule, a criminal defendant may move to suppress evidence obtained in violation of the Fourth Amendment.  *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 341 (1974); Fed. R. Crim. P. 41(h).  The exclusionary rule covers not just evidence obtained as a direct result of the illegal search or seizure, but also evidence derived from that illegality, which is considered fruit of the poisonous tree. *United States v. Ngumezi*, 980 F.3d 1285, 1291 (9th Cir. 2020).   When deciding a motion to suppress, courts first determine whether a Fourth Amendment violation occurred, and then whether suppression is appropriate. *See Davis v. United States*, 564 U.S. 229, 236–39 (2011).

**ANALYSIS**

**I.     The Order to Roll Down the Window Was Not a Search**

A search occurs where the government invades a place in which a person has a reasonable expectation of privacy. *United States v. Jones*, 565 U.S. 400, 406 (2012). Although "[o]ne who owns and possesses a car, like one who owns and possesses a

house, almost always has a reasonable expectation of privacy in it," *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018), "[t]here is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983).

Here, Defendant maintains that Officer Khan's instruction to roll down the passenger-side window was a search because the car window was tinted, and the interior of the car was dark, meaning the order "significantly altered how much of the interior of the car was visible." (Mot. at 6.) This Court has reviewed the evidence submitted by Defendant. (Ex. D; Ex. E; Incident Rep.) The body camera footage from the vehicle stop clearly shows that the window tinting on Defendant's car was not dark enough to prevent a passerby (or Officer Stephens) from viewing the cannabis on the passenger-side floorboard even with the window rolled up. (Ex. D at 00:32–00:45; Ex. E at 00:36–00:40.) As such, Defendant did not have a reasonable expectation of privacy in the passenger-side floorboard of his car. *See Brown*, 460 U.S. at 740; *see also United States v. Stanfield*, 109 F.3d 976, 987–88 (4th Cir. 1997) (noting it was "questionable whether [defendant] had any privacy right at all in those portions of his interior passenger compartment relevant [to] th[e] case" as "the undisputed evidence in the record [demonstrated the vehicle's] tinted windows would not have prevented [a] passersby from viewing the [vehicle]'s interior under all lighting conditions."). Further, even if the interior of the vehicle was dark, Officer Stephens was permitted to illuminate the floorboard using a flashlight. *See Brown*, 460 U.S. at 739–40 (holding it "beyond dispute" that an officer shining his flashlight to illuminate the interior of defendant's car "trenched upon no right secured . . . by the Fourth Amendment").

Defendant also argues the officers' "actions make clear that the purpose of having [Defendant] roll down the window was to make the passenger area available for visual inspection." (Mot. at 6.) At the point when Officer Khan ordered Defendant to roll his window down, Officer Stephens was approaching the passenger-side of the

5

vehicle where he would also potentially need to interact with Defendant. "Officers routinely ask drivers to roll their windows down during traffic stops . . . to facilitate communication between the officers and the driver" or to "minimize[] the threat to officer safety inherent in all traffic stops." *United States v. Smith*, No. 2:19-cr-00213-JAM, 2020 WL 5603668, at *2 (E.D. Cal. Sept. 18, 2020).[4] Thus, Officer Khan's order was justified by valid communication or safety concerns. *See id.*

In short, Officer Khan's order to Defendant to roll down his passenger-side window and Officer Stephen's use of a flashlight to look inside the vehicle did not infringe on any reasonable privacy expectation and was not a search. *See id.* (holding an officer's order to defendant to lower his tinted windows, and another officer's use of a flashlight to better see into the car, was not a search under *Brown*).

## II.   The Officers Had Probable Cause to Search the Vehicle

"[I]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). For the plain view exception to apply, the government must establish the following elements: (1) police did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed; (2) the seizing officer must have a lawful right of access to the evidence; and (3) the incriminating nature of the evidence seized must be "immediately apparent." *Horton v. California*, 496 U.S. 128, 136–37 (1990).

The "automobile exception" is a recognized exception to the warrant requirement, under which police may search a car if they have probable cause to

---

[4] Defendant argues the concerns about officer safety were lessened here when compared with *Smith*, as the driver there was combative, yelled at the officers, and engaged in a struggle when the officers attempted to remove him from the car, *United States v. Smith*, No. 2:19-cr-00213-JAM, 2020 WL 4288015, at *1 (E.D. Cal. July 27, 2020) (previous order discussing the facts of the same case), while here, by contrast, Defendant was calm and compliant. (Reply (ECF No. 45) at 3.) However, Smith did not exhibit that threatening behavior until later into the stop, after having rolled his windows down. *Smith,* 2020 WL 4288015, at *1. The Court agrees that Defendant's behavior does not bear on the validity of the initial command as it relates to officer safety. Nevertheless, given the often-volatile nature of traffic stops, officers maintain an interest in safety even with a driver who is initially complaint.

believe it contains contraband or evidence of a crime. *See United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). It is the government who bears the burden of demonstrating that a warrantless search or seizure falls within an exception to the warrant requirement. *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).

Here, the officers conducted a lawful traffic stop based on reasonable suspicion of violations of the California Vehicle Code. (Opp'n at 1–2;) *see United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). After approaching the vehicle, Officer Stephens viewed two pounds of cannabis on the passenger-side floorboard in plain view, a fact he shared with Officer Khan. (Ex. E at 1:00–1:03.) Defendant himself confirmed that Officer Stephens had viewed cannabis, stating "it's about a pound." (Ex. D at 1:10.) By this point, Officer Khan had also seen two scales and plastic baggies on the driver-side floorboard beneath Defendant's legs. (Incident Rep. at 10.) Two pounds of cannabis exceeds the amount recreational users or medical patients may typically possess under state law. *See* Cal. Health & Safety Code § 11357(a) (legalizing possession of up to 28.5 grams of cannabis for persons over the age of 21); Cal. Health & Safety Code § 11362.77(a) (legalizing possession of up to eight ounces of dried cannabis for qualified medical patients). And the baggies and scale indicated that Defendant may have been engaged in drug trafficking. *See U.S. v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) ("Plastic baggies and scales are well-known tools for the packaging and sale of drugs.").

Collectively, the considerable amount of cannabis plus baggies and scales in plain view gave the officers probable cause to search the vehicle for further contraband or evidence of drug trafficking. (Incident Rep. at 10 ("Based off my initial observation and my training and experience, large amounts of drugs and digital scales indicate drug dealing.");) *see, e.g.*, *United States v. Collins,* 827 F. App'x 721, 722–23 (9th Cir. 2020) (affirming a search was supported by probable cause because officers' observation during a traffic stop in plain view of twenty-four grams of cannabis and a digital scale in an area with high amounts of drug trafficking

"constitute[ed] 'information sufficient to lead a person of reasonable caution to believe' defendant possessed the marijuana for sale, not for personal medical use, despite his repeated statements to the officers that he had a valid medical marijuana card"); *United States v. Guthery*, No. 2:22-cr-00173-KJM, 2023 WL 2696824, at *11 (E.D. Cal. Mar. 29. 2023) (finding deputies had probable cause to search a car when they observed two pounds of cannabis and a scale in plain view and found a firearm on defendant's person). It is true under California state law that the lawful possession of marijuana in a vehicle does not give rise to probable cause to search the vehicle. *See People v. Hall*, 57 Cal. App. 5th 946, 948–49 (2020) (collecting cases). However, the cases cited in *Hall* for this proposition involved officers finding small amounts of cannabis which were clearly legal under California guidelines, a far cry from the two pounds at issue here. *See, e.g.*, *People v. Johnson*, 50 Cal. App. 5th 620, 635 (2020) (concerning "a couple grams" of marijuana in the car's center console); *People v. Lee*, 40 Cal. App. 5th 853, 866, 870 (2019) (concerning a small, legal amount of cannabis on defendant's person); *People v. Shumake*, 45 Cal. App. 5th Supp. 1, 6, 8 (2019) (concerning "[a]ppellant's container with 1.14 grams of loose cannabis flower [which was] far below the 28.5 grams permitted by law").

Although Defendant contends he was authorized by his doctor to possess "up to ten pounds of marijuana" under California Health & Safety Code § 11362.77(b), (Mot. at 7; Ex. B at 9), the officers were not aware of Defendant's medical cannabis card at the outset of the search, nor were they required to determine if Defendant had a medical cannabis card before initiating the search. *See United States v. Phillips*, 9 F. Supp. 3d 1130, 1137 (E.D. Cal. 2014) (It is not "require[d] that police determine whether an individual has a medical marijuana card before making an arrest, or conducting a search, for possession of marijuana"). While officers are required to take a medical card into account when determining probable cause once it is brought to their attention, *id.* at 1138, the officers here did not learn of the medical card until after the search began, at which point Officer Khan had already seen the scale and baggies

8

evidencing drug trafficking. (Ex. D at 1:30–1:40, 3:20–3:26; Ex. E at 2:05–2:25; Incident Rep. at 10;) *see also Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (an officer may not ignore exculpatory evidence that would "negate a finding of probable cause," but the mere existence of some evidence that could suggest a defense to the charge does not negate probable cause). In any event, even if they had seen the medical marijuana card, given the amount of marijuana in the vehicle, coupled with the baggies and scale, they would have still been able to continue their search. *See Wilson v. City of Merced*, No. CV F 07-1235-LJO-DLB, 2008 WL 4737159, at *5 (E.D. Cal. Oct. 28, 2008) (holding that officers were not required to halt their law enforcement activity when showed a medical cannabis card during a search, even assuming the card was valid). Thus, Defendant's medical cannabis card does not impact the probable cause analysis.[5]

The Court concludes that the search did not violate Defendant's Fourth Amendment rights because the officers had established probable cause to search the vehicle. S*ee Scott*, 705 F.3d at 417 (holding a vehicle search was justified under the automobile exception because the government had established law enforcement had probable cause to believe the vehicle may have contained evidence of a crime).

**III.   The Stop was Not Unlawfully Prolonged**

Law enforcement officers may prolong a permissible traffic stop only if the additional time is "(1) part of the stop's 'mission' or (2) supported by independent reasonable suspicion." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019).

---

[5] The Court also notes that California Health and Safety Code section 11362.775 cited in Defendant's doctor's recommendation, which legalizes collective or cooperative cultivation of cannabis for medicinal purposes, was repealed prior to his arrest, further complicating the question of whether his possession of two pounds of cannabis was legal. *See* Cal. Heath & Safety Code § 11362.775(e) ("This section is repealed one year after the date upon which the notice is posted pursuant to subdivision (d)."); *Notice Regarding the Repeal of Health and Safety Code Section 11362.775 Medical Marijuana Program – Collectives or Cooperatives*, Dep't Cannabis Control (Jan. 9, 2018), https://cannabis.ca.gov/2018/01/notice-regarding-the-repeal-of-health-and-safety-code-section-11362-775-medical-marijuana-program-collectives-or-cooperatives/. However, this is not relevant for this Order.

"Reasonable suspicion" exists where officers, based on the totality of the circumstances, have a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). Although a mere "hunch" will not suffice, "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (internal quotations omitted). Further, officers may only frisk a person during a traffic stop based on reasonable suspicion that the suspect is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009).

Here, Officer Khan's questions concerning additional contraband in the vehicle and Defendant being on probation, parole, or post-release community supervision were supported by the officer's reasonable suspicion that Defendant was engaged in drug trafficking based on the large quantity of cannabis, baggies, and scales in plain view. *See, e.g., United States v. Pinex*, 720 F. App'x 345, 346–47 (9th Cir. 2017) (affirming denial of a suppression motion because officers reasonably suspected defendant was involved in drug trafficking, which supported their decision to prolong a stop); *United States v. Verduzo-Verduzco*, No. 1:17-cr-00231-DAD-BAM, 2018 WL 4057270, at *7 (E.D. Cal. Aug. 24, 2018) (finding a traffic stop was not prolonged when an officer's additional questioning about contraband in the vehicle was supported by a reasonable suspicion defendants were engaged in drug trafficking).

The suspicion that Defendant was engaged in drug trafficking also supported the pat down search. *See United States v. Davis*, 530 F.3d 1069, 1082–83 (9th Cir. 2008) ("Because officers reasonably suspected that [defendant] was involved in narcotics activity, it was also reasonable for them to suspect that he might be armed."); *U.S. v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086–87 (9th Cir. 2000) (approving pat-down search for weapons based on reasonable suspicion that defendant was engaged in drug trafficking).

Thus, the stop was not unlawfully prolonged because the questions and pat down were supported by reasonable suspicion.[6]  *See Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015) (an officer may conduct unrelated checks during an otherwise lawful traffic stop when supported by reasonable suspicion).

### IV. Fruits of the Poisonous Tree

"[T]he Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures." *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004).  As held above, the search was lawful and the stop was not illegally prolonged.  Thus, the Court need not address Defendant's fruits of the poisonous tree argument.  *See United States v. Parker*, 919 F. Supp. 2d 1072, 1081–82 (E.D. Cal. 2013) (affirming denial of a motion to suppress because the contraband produced from a vehicle was the result of a lawful search, not the fruit of any poisonous tree).

### CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion (ECF No. 32) is DENIED.

IT IS SO ORDERED.

Dated:  **June 9, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

---

[6] The Court also notes the questions and pat down extended the stop by seconds at most, which further supports the conclusion the stop was not unlawfully prolonged.  Although the Ninth Circuit has held that "unrelated questions . . . require[] independent, reasonable suspicion if [the additional investigation] adds any time to a traffic stop," *Landeros*, 913 F.3d at 867, the stop in *Landeros* was prolonged by a few minutes, not mere seconds.  Here, Officer Khan's additional investigation was short and supported by reasonable suspicion, and was thus lawful.